IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELE I.,[1]                                              No. 6:20-cv-01982-HZ

                        Plaintiff,                      OPINION & ORDER

       v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.


Ari D. Halpern
Halpern Law Group
62910 OB Riley Rd., Ste. 100
Bend, OR 97703

       Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Jeffrey E. Staples
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Michele I. ("Plaintiff") brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the decision of the Commissioner and remands this case for further proceedings.

**PROCEDURAL BACKGROUND**

      Plaintiff first applied for DIB on July 14, 2014, alleging an onset date of February 1, 2013. Tr. 82, 139.[2] Plaintiff was 51 years old as of her alleged onset date. *See* Tr. 138. Her first application was denied initially and on reconsideration. Tr. 139.

      On October 21, 2016, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 80-114. On March 17, 2017, the ALJ found Plaintiff not disabled. Tr. 118-32. In his decision, the ALJ determined that Plaintiff has the following severe impairments: obesity, radiculopathy, spondylosis, post-laminectomy syndrome, headaches, and history of diverticulitis/diarrhea. Tr. 120. After consideration of the record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform medium work, as defined in 20 CFR 404.1567(c),

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

that does not require lifting or carrying more than thirty pounds occasionally and twenty pounds frequently; that does not require sitting more than thirty minutes at a time and six hours total in a workday; that does not require standing or walking more than thirty minutes at a time and four hours total in a workday; that does not require climbing of ladders, ropes, or scaffolds; that does not require more than occasional stooping, kneeling, crouching, crawling, or climbing of ramps or stairs; and that does not require exposure to hazards.

Tr. 122. The Appeals Council denied review. Tr. 139.

Plaintiff filed her second application for DIB on February 15, 2018, alleging an onset date of March 15, 2017. Tr. 138-39. Her second application was denied initially and on reconsideration. Tr. 148, 164. On February 4, 2020, Plaintiff appeared, again with counsel, before a second ALJ. Tr. 32. On March 2, 2020, the ALJ found Plaintiff not disabled. Tr. 14-26.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on breast cancer and spine issues. Tr. 138-39. At the time of her second alleged onset date, she was 55 years old. Tr. 138. She has at least a twelfth-grade education and past relevant work experience as a medical billing clerk and radiologic technologist. Tr. 25, 262.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the RFC to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "obesity, history of left breast cancer,

degenerative disc disease with radiculopathy, history of post laminectomy syndrome/myalgia, joint osteoarthritis, bilateral carpal tunnel syndrome with history of left release surgery, and headaches/migraines (20 CFR 404.1520(c)).” Tr. 17. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) with the following limitations:

> [T]he claimant can lift and carry up to 25 pounds occasionally and 20 pounds frequently. During an eight-hour day, she can stand and/or walk up to four hours total, and sit up to six hours total. She can frequently handle and finger bilaterally. She could occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She could occasionally kneel, crouch, and stoop. She should have no exposure to workplace hazards, such as dangerous machinery and unprotected heights.

Tr. 20. Because of these limitations, the ALJ concluded that Plaintiff could perform her past relevant work. Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 26.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings “are based on legal error or are not supported by substantial evidence in the record as a whole.” *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). “Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). “Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.” *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v.*

*Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal

quotation marks omitted).

## DISCUSSION

Plaintiff argues the Commissioner erred by: (1) improperly finding the presumption of

continuing nondisability was not rebutted; (2) failing to find Plaintiff's mental impairments are

severe; (3) improperly rejecting the opinion of Plaintiff's treating provider Kristine Laughlin-

Hall, PA; (4) improperly rejecting Plaintiff's subjective symptom testimony; (5) improperly

addressing lay witness testimony from Plaintiff's husband; and (6) omitting the limitations

assessed by Plaintiff's treating provider at step four. Pl. Br. 8-18, ECF 13.

## I.      Presumption of Continuing Nondisability

The Social Security Act provides that "[t]he findings and decision of the Commissioner .

. . after a hearing shall be binding upon all individuals who were parties to such hearing." 42

U.S.C. § 405(h). The Ninth Circuit recognizes that "[t]he principles of res judicata apply to

administrative decisions, although the doctrine is applied less rigidly to administrative

proceedings than to judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

Accordingly, an "administrative law judge's findings concerning [a] claimant's residual

functional capacity, education, and work experience are entitled to some res judicata

consideration in subsequent proceedings." *Id.* at 694. "In the social security context, a previous

finding that a claimant is not disabled creates a presumption of continuing nondisability."

*Herbert v. Colvin*, No. 3:13-CV-01888-BR, 2014 WL 4956448, at *3 (D. Or. Oct. 1, 2014)

(quoting *Scott v. Colvin*, No. 13-CV-1189 W(DHB), 2014 WL 3797491, at *13 (S.D. Cal. Aug.

1, 2014)). A claimant can overcome the presumption by showing a "changed circumstance"

indicating a greater disability. *Id.* (quoting *Scott*, 2014 WL 3797491 at * 13). The Commissioner has instructed adjudicators to "adopt [certain findings] from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding[.]" Acquiescence Ruling ("AR") 97-4(9), 1997 WL 742758 at *3.

In *Chavez*, the court found "attainment of 'advanced age' constitutes a changed circumstance precluding the application of res judicata to the first [ALJ's] ultimate finding against disability." 844 F.2d at 693; AR 97-4(9), 1997 WL 742758 at *2. In addition, the court concluded that "[t]he first [ALJ's] findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent proceedings." *Chavez*, 844 F.2d at 694; AR 97-4(9), 1997 WL 742758 at *2.

Here, the ALJ found the Plaintiff did not rebut the presumption of continuing nondisability, but stated that "even if it was rebutted, the same decision would issue based on the evidence in this record." Tr. 17. Plaintiff was 51 years old (approaching advanced age) as of her first alleged onset date, and 55 years old (advanced age) as of her current alleged onset date. *See* Tr. 138. Additionally, at the initial level, it was noted "[t]here is new and material evidence in file." Tr. 143; *see* Tr. 158-59, 270. Therefore, the ALJ erred in finding the presumption of nondisability was not rebutted. However, this error is harmless because the ALJ performed the sequential evaluation process on the new evidence.

Plaintiff also argues the ALJ erred "in adopting most of the RFC finding from the prior decision when the record shows that there is new and material evidence." Pl. Br. 9. The Court disagrees. "The first [ALJ's] findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some res judicata consideration in subsequent

proceedings." *Chavez*, 844 F.2d at 694; AR 97-4(9), 1997 WL 742758 at *2. Additionally, the fact that the presumption is rebutted and there is new and material evidence does not mean the new RFC cannot contain the original limitations.

Here, the RFC contains most of the original limitations plus additional limitations to account for Plaintiff's carpal tunnel syndrome. However, it is unclear why the ALJ left out the "thirty minutes at a time" sitting and standing or walking limitations detailed in the first RFC.

## II.     Mental Impairments

The ALJ found "the updated records persuasively establishes [sic] the presence of non-severe mental impairments, posttraumatic stress disorder (PTSD) and adjustment disorder with anxiety." Tr. 18.  However, the ALJ found "no objective evidence that the claimant's depression causes any social limitations and that it causes no more than mild cognitive limitations." Tr. 18.

To determine whether a claimant has a severe mental impairment, the ALJ must rate the degree of functional limitation for four functional areas known as the "paragraph B" criteria: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)-(c); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ addressed all four criteria here and concluded Plaintiff's mental health impairments caused "no more than 'mild' limitation in any of the functional areas." Tr. 19. The ALJ's finding is supported by substantial evidence.

First, the ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information. Tr. 18. To support his finding the ALJ notes the record shows Plaintiff has "consistently presented as alert, oriented, and able to advocate for her needs. She attends appointments as scheduled and independently manages her medications. She shops in stores and online, and manages her finances independently. [] She reads and watches television daily." Tr.

18 (internal citations omitted) (citing Tr. 271-78; *see* Tr. 446, 450, 456, 475, 485, 486, 527, 639, 643, 648, 652, 701, 702, 706, 708, 760, 772, 775, 817, 821, 826, 832). Additionally, the ALJ notes, according to Plaintiff's testimony, since 2015 she has been caring for her husband, who has a blood clotting disorder by managing his medications and taking him to his doctor appointments. Tr. 18 (*see* Tr. 38-42).

Second, the ALJ found that Plaintiff did not have any limitation interacting with others. Tr. 18. In support, the ALJ notes, the record shows Plaintiff "has consistently exhibited appropriate interpersonal behavior toward treating and examining clinicians. She shops in stores, attends weekly church services, and visits with friends and family via telephone and in-person visits." Tr. 18 (internal citation omitted) (citing Tr. 271-78; *see* Tr. 51, 573, 576, 579, 581, 584, 587, 589, 592, 594, 597, 599, 602, 604, 607, 610, 612, 615, 617, 619, 623, 627, 628, 803, 808, 810, 812).

Third, the ALJ found that Plaintiff had mild limitations concentrating, persisting, or maintaining pace. Tr. 19. In support, the ALJ notes, "treatment notes do not objectively describe her as exhibiting disturbances of concentration or focus. She reads and watches television daily, does beading once or twice a month, drives, shops in stores and online." Tr. 19 (internal citation omitted) (citing Tr. 271-78).

Finally, the ALJ found that Plaintiff did not have any limitation adapting or managing herself. Tr. 19. In support, the ALJ noted, Plaintiff reported that "difficulties with self-care were due to physical, not psychological issues." Tr. 19 (internal citation omitted) (citing Tr. 271-78). The ALJ also notes Plaintiff prepares meals, performs household chores, drives, shops in stores and online, manages her finances, cares for a pet, and attends regular doctor appointments and church services. Tr. 19 (citing Tr. 271-78). Additionally, the ALJ notes Plaintiff's testimony that

she cares for her husband, who has a blood clotting disorder by managing his medications and

taking him to his doctor appointments. Tr. 19 (*see* Tr. 38-42).

In the aggregate, the ALJ concluded Plaintiff's "medically determinable mental

impairments caused no more than 'mild' limitation in any of the functional areas and the

evidence does not otherwise indicate that there is more than a minimal limitation in the

claimant's ability to do basic work activities, they were non-severe." Tr. 19. The ALJ's

conclusion that Plaintiff's mental impairments were not severe is supported by substantial

evidence in the record.

### III.    Medical Opinion of Kristine Laughlin-Hall, PA

Plaintiff alleges the ALJ improperly rejected the opinion of Plaintiff's treating provider,

Kristine Laughlin-Hall, PA. Pl. Br. 11. The ALJ notes PA Laughlin-Hall opined Plaintiff had

"extreme limitations" in functioning. Tr. 24. Specifically, the ALJ notes, PA Laughlin-Hall

opined:

> [C]laimant cannot sit, stand or walk more than 15 minutes at a time, cannot lift or
> carry more than 1 pound, cannot reach more than 30 minutes total in an 8-hour day,
> cannot use her left hand for handling and fingering for more than 10 minutes total
> in an 8-hour day and her right hand for handling and fingering for more than 30
> minutes total in an 8-hour day, has to take ten (10) unscheduled one (1) hour breaks
> in an 8-hour workday (her math is a bit odd here), and must keep her feet elevated
> 80 to 85% of the workday. Claimant would be off task 25% or more during the
> workday and miss 5 or more days in a month.

Tr. 24 (citing Tr. 836-40).

New regulations about weighing medical opinion evidence apply to claims filed on or

after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819,

82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new

regulations, ALJs are no longer required to give deference to any medical opinion, including

treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§

404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ did not err in his consideration of PA Laughlin-Hall's opinion. The ALJ considered the two most important factors in evaluating PA Laughlin-Hall's medical opinion—supportability and consistency—and the record supports the ALJ's conclusions. The ALJ found the record "does not support [the] extreme limitations opined by the physician's assistant." Tr. 24. The ALJ supports this finding by noting PA Laughlin-Hall's opinion "markedly conflict[s] with opinions of the reviewing physicians for the State agency who examined the claimant's medical records." Tr. 24 (*see* Tr. 141-48, 158-64). The ALJ further supports his reasoning by noting that "[i]t is doubtful she could be a caretaker for her husband as described in the medical records if she had such extreme limitations." Tr. 24 (citing 802-13). Additionally, the ALJ cites to recent physical exams that show Plaintiff presents,

> with normal appearance, well-developed, well-nourished, normal range of motion, normal reflexes, normal strength, normal muscle tone, normal coordination, and a sensory deficit to light touch in her lower extremity []. In her review of systems, she denies arthralgias, back pain, gait problem, joint swelling, myalgias, neck pain, and weakness []. In December 2019, she reported some back pain, but upon examination her appearance was normal and she was neurologically intact []. In a

November 12, 2019 ED visit, she reported no neurological or musculoskeletal symptoms and she presented in "no distress" [].

Tr. 24-25 (internal citations omitted) (citing Tr. 793, 815-34). After reviewing the entire record, the ALJ found PA Laughlin-Hall's opinion not persuasive. Tr. 25. The ALJ's consideration of PA Laughlin-Hall's medical opinion is supported by substantial evidence.

## IV.    Subjective Symptom Testimony

Plaintiff argues the ALJ improperly rejected Plaintiff's subjective symptom testimony. Pl. Br. 14. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

The ALJ summarized Plaintiff's subjective symptom testimony stating:

[Plaintiff] is unable to sit and stand for long periods due to severe back pain. However, she acknowledges that no treatment provider has ever prescribed an ambulatory device. Similarly, she has no restrictions on her driver's license. She has bilateral carpal tunnel syndrome. She underwent release surgery on her left wrist. She has not undergone surgery on the right wrist. The residual functional capacity limits her to lifting and carrying no more than 25 pounds and includes additional limitations regarding bilateral handling and fingering. She stated she takes Imitrex for migraine, and the headaches cause irritability and poor concentration. Additionally, she alleges that she is easily overwhelmed by activities of daily living, such as thinking about what to have for dinner. She alleges that she cannot be around others due to anxiety.

Tr. 21. After careful consideration of the evidence, the ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. The ALJ supports his finding by citing to: (1) Plaintiff's activities of daily living; (2) conservative and effective treatment; and (3) lack of support from the objective medical evidence.

/ / / / /

### A. Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context to reach his conclusion on the claimant's credibility. *Id.* at 722-23.

The ALJ found that despite alleging that Plaintiff is easily overwhelmed by activities of daily living, such as thinking about what to have for dinner and that she cannot be around others due to anxiety, "her treatment notes consistently describe her as appearing alert and oriented." Tr. 21 (*see* Tr. 45, 46, 446, 450, 456, 475, 485, 486, 527, 639, 643, 648, 652, 701, 702, 706, 708, 760, 772, 775, 817, 821, 826, 832). Additionally, the ALJ noted Plaintiff has "consistently exhibited appropriate interpersonal behavior with her various treatment providers and with other examining clinicians." Tr. 21 (*see* Tr. 576, 579, 581, 584, 587, 589, 592, 594, 597, 599, 602, 604, 607, 610, 612, 615, 617, 619, 623, 627, 628, 803, 808, 810, 812).  The ALJ cites to a written

statement, where Plaintiff states "she drives, shops in stores, and attends weekly church services." Tr. 21 (internal citation omitted) (citing Tr. 272-75). While these activities reasonably conflict with Plaintiff's testimony regarding her mental impairments, the ALJ fails to explain how these activities of daily living are inconsistent with Plaintiff's testimony that she is unable to sit and stand for long periods due to severe back pain, or meet the threshold for transferrable work skills.

Additionally, the ALJ notes that Plaintiff testified "that she has been caring for her husband since 2015, which involves managing his medications and taking him to his doctor appointments." Tr. 22 (*see* Tr. 38-40). With respect to the care Plaintiff provides to her husband, she testified her husband "is physically able to take care of himself." Tr. 40. When asked what kind of care she provides her husband, Plaintiff stated she does "nothing physical." Tr. 40. Furthermore, Plaintiff stated she "[does] his meds and make[s] sure he gets to his doctors' appointments." Tr. 38. As with Plaintiff's other activities, the ALJ fails to explain how these activities of daily living are inconsistent with Plaintiff's testimony that she is unable to sit and stand for long periods due to severe back pain or meet the threshold for transferrable work skills. Thus, the ALJ erred in rejecting Plaintiff's subjective symptom testimony regarding her spine impairments as inconsistent with her quite limited activities of daily living.

### B. Conservative and Effective Treatment

The effectiveness of treatment is relevant to determining the severity of a claimant's symptoms, and an ALJ may properly rely on evidence of effective treatment to discount a claimant's alleged symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

(9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

With respect to Plaintiff's December 2017 left-side breast cancer diagnosis, the ALJ notes she underwent a partial mastectomy and received radiation treatment between January 2018 and March 2018. Tr. 22 (citing Tr. 387-525). The ALJ highlights follow-up notes from June 2018 that state Plaintiff was doing well, and notes from August 2018 and March 2019 that state Plaintiff exhibited no clinical evidence of breast cancer. Tr. 22 (citing Tr. 526, 701). In response, the ALJ found the exertional, postural, and environmental limitations contained in the RFC account for any pain and fatigue related to Plaintiff's three-month course of cancer treatment. Tr. 22-23. As to the Plaintiff's left-side breast cancer diagnosis, the ALJ's finding is supported by substantial evidence in the record.

With respect to Plaintiff's carpal tunnel syndrome, the ALJ noted treatment notes from Central Oregon Spine & Sports ("COSS") from March 2019 that showed upon examination, Plaintiff "exhibited 4/5 strength with left wrist flexion and extension, and had positive Tinel's signs in the left wrist." Tr. 23 (citing Tr. 757). In May 2019, she underwent left-side carpal tunnel release surgery. Tr. 738-39. The ALJ cites to follow-up notes from six weeks after Plaintiff's carpal tunnel release surgery where Plaintiff stated, "the numbness has nicely resolved." Tr. 23 (citing Tr. 733). The ALJ further notes at this follow-up exam, Plaintiff exhibited mild swelling, normal sensation to light touch, and "excellent" strength with finger and thumb abduction. Tr. 23 (*see* Tr. 733). The ALJ also notes that in November 2019, Aaron H. Hoblet, MD, released Plaintiff to activities as tolerated.  Tr. 23 (citing Tr. 730). In consideration of the Plaintiff's carpal tunnel syndrome, the RFC analysis limited her to lifting and carrying no more than twenty-five pounds occasionally, performing no more than frequent bilateral handling

and fingering, and precludes climbing ladders, ropes, and scaffolds. Tr. 23. As to the Plaintiff's

carpal tunnel syndrome, the ALJ's finding is supported by substantial evidence in the record.

With respect to Plaintiff's back impairment, the ALJ notes Plaintiff's course of treatment

does not support her allegation of disability. Tr. 21. Specifically, the ALJ notes:

> In July 2017, [Plaintiff] presented to Nancy Maloney, MD, for follow-up regarding
> pain management related to lumbar spondylosis. [] She also complained of right
> lateral elbow pain, and left calf burning at night. Her current medication regime
> included extended release morphine sulfate and Neurontin.  Additionally, she used
> recreational marijuana and had access to a TENS unit. The notes state she "works
> on maintaining a reasonable activity level. Her pain disability index score [of] 34
> indicates good functional performance."

Tr. 21-22 (internal citation omitted) (citing 465-67). The ALJ also cites treatment notes from

Mark Sternfeld, MD, from November 2017 that note, "while the claimant stated her pain

increased with activity and stress, she also reported the pain management treatment received

from Dr. Maloney 'is going quite well and she is happy with the results.'" Tr. 22 (internal

citation omitted) (citing Tr. 472-75). Additionally, the ALJ highlights in follow-up notes from

March 2018, Plaintiff reported she "self-discontinued immediate release morphine two months

earlier due to stomach upset. [] She continued to manage her pain with Neurontin and

recreational marijuana." Tr. 23 (internal citation omitted) (citing Tr. 487-89).

An unexplained, or inadequately explained, failure to seek treatment or follow a

prescribed course of treatment can be a basis to discount a claimant's symptom testimony. *Fair*

*v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th

Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony

regarding severity of an impairment.") (internal quotation marks omitted). Conservative

treatment and failure to seek out treatment can be "powerful evidence regarding the extent to

which [a claimant] is in pain." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However,

no adverse credibility finding is warranted where a claimant has a good reason for failing to obtain treatment. *See Orn*, 495 F.3d at 638.

Here, The ALJ's reasoning with respect to Plaintiff's back pain is not supported by the record. Plaintiff's treatment—narcotic pain medications and injections after multiple surgeries in her lumbar spine—is not conservative. Tr. 454 (back pain history); *see Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); *Christine G. v. Saul*, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) (citing cases and finding that "[m]any courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be 'conservative' treatment"). Further, these treatments are not successful at completely managing her pain. Even while taking morphine, Plaintiff regularly reports her pain as a five or six out of ten, worse as the day progresses, and still limiting. Tr. 447, 454, 451 (reporting walking only fifteen minutes every other day). Plaintiff explained she discontinued morphine because of gastrointestinal issues and suffers side effects from other narcotics. Tr. 487-88, 490-91. Relief from injections has been temporary. Tr. 552. Plaintiff's doctor describes her pain as "intractable" and expects that even "after reasonable efforts, full pain resolution is not anticipated." Tr. 491. Plaintiff's course of treatment is not a clear and convincing reason to discount Plaintiff's subjective testimony concerning her back impairment.

In sum, the Court concludes the ALJ's findings regarding Plaintiff's left-side breast cancer and carpal tunnel syndrome are supported by substantial evidence based on the record as a whole. However, the Court concludes the ALJ's finding regarding Plaintiff's back impairment is not supported by substantial evidence in the record.

///

### C. Lack of Support from Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's

symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful

indicator to assist us in making reasonable conclusions about the intensity and persistence of

your symptoms[.]"). Inconsistency between a claimant's testimony and the objective medical

record is a valid reason to discount their testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874

(9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight

fluctuation conflicted with the medical record). And in some cases, the ALJ can discount

claimant testimony when that testimony is not supported by the objective medical record. *See

Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive'

pain symptoms could not be explained on a physical basis" by claimant's physician); *Burch v.

Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and

X-rays in discounting the plaintiff's testimony as to her back pain.). But "the Commissioner may

not discredit the claimant's testimony as to the severity of symptoms merely because they are

unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722.

The ALJ found the objective medical evidence does not support Plaintiff's allegation of

disability. Specifically, the ALJ notes:

> MRI images of the claimant's lumbar spine taken in November 2019 showed the
> T12 through L2 levels to be unremarkable. [] The images showed a "minimal" disc
> bulge at L2-3, with "mild" bilateral facet hypertrophy, and without foraminal or
> canal stenosis; and "mild" disc desiccation at L3-4, with "mild" bilateral facet
> hypertrophy, and without foraminal or canal stenosis. The images also showed
> "advanced" disc collapse at L4-5, with evidence of remote left laminotomy, "mild"
> facet hypertrophy, and "mild" bilateral foraminal stenosis; and a "minimal" disc
> bulge at L5-S1, with "moderate" bilateral facet hypertrophy and bilateral foraminal
> stenosis. The images revealed no evidence of compression fracture or scoliosis, and
> showed the paraspinal soft tissues to be unremarkable.

Tr. 21 (internal citation omitted) (citing Tr. 728-29). Additionally, the ALJ found the treatment notes from COSS, from March 2018 to December 2019, show "the claimant received a series of injections to her lumbar spine, left sacroiliac joint, and cervical spine. However, the objective clinical observations of the COSS clinicians do not objectively describe limitations that would support the claimant's allegation of disabling back pain." Tr. 23 (*see* Tr. 534-67, 754-83). Specifically, the ALJ emphasizes that Plaintiff's treatment notes showed:

> while [Plaintiff] would exhibit reduced range of motion in her lumbar spine, and report tenderness to palpation, she consistently had negative bilateral straight leg raises from the seated and supine positions. Similarly, she repeatedly exhibited intact strength and reflexes in her bilateral lower extremities, and ambulated with a regular gait.

Tr. 23 (*see* Tr. 534-67, 754-83).

Here, the ALJ's other reasons for rejecting Plaintiff's back impairment testimony—activities of daily living, and conservative and effective treatment—were legally insufficient to reject Plaintiff's testimony regarding her back impairment; therefore, a mere lack of objective support, without more, is insufficient to reject Plaintiff's back pain testimony. Accordingly, the Court finds the ALJ erred in discounting Plaintiff's back pain testimony. *Cf. Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony."). The ALJ's findings with respect to Plaintiff's back impairment are not supported by substantial evidence.

## V.    Lay Witness Testimony

Plaintiff argues the ALJ erred in improperly addressing the lay witness statements from Plaintiff's husband. Pl. Br. 16. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take

into account." *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. The ALJ is not required, however, "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

In addressing the lay witness statement from Plaintiff's husband, the ALJ found the statement "is generally consistent with the claimant's allegations. However, the undersigned finds the objective medical evidence, treatment notes, and opinions of the [Disability Determination Services] consultants to have greater persuasive value than [Plaintiff's husband's] allegations." Tr. 25. In weighing the record as a whole, the ALJ found the lay witness statement "to be of limited persuasive value for arriving at a determination of the claimant's overall residual functional capacity." Tr. 25.

As discussed above, the ALJ improperly discounted Plaintiff's subjective symptom testimony regarding her back impairment, so the same reasons that were insufficient to discount Plaintiff's testimony are not germane reasons to discount the testimony of Plaintiff's husband. *See Molina*, 674 F.3d at 1123. Accordingly, the ALJ erred.

## VI.    Hypothetical Question to the Vocational Expert

Plaintiff argues the ALJ, "in posing the hypothetical questions to the vocational expert, [] omitted Plaintiff's credible allegations and those of the lay witness." Pl. Br. 17. The

Commissioner responds that "[t]he ALJ included all limitations supported by the record in the hypothetical to the vocational expert, and an individual with these limitations could perform Plaintiff's past relevant work identified at step four." Def. Br. 11-12, ECF 15.

The vocational expert ("VE") may be called to testify at the ALJ hearing in order to identify occupations listed in the Dictionary of Occupational Titles ("DOT") that the claimant retains the capacity to perform given their RFC and vocational factors. *Valentine*, 574 F.3d at 689. Such testimony may cover the claimant's ability to do past relevant work or to perform other work in the national economy, or both.

In order to have sufficient evidentiary value, the dispositive hypothetical question posed to the VE must include all of the limitations, which are supported by substantial evidence in the record, and which the ALJ has explicitly "accepted," usually as set forth in the RFC. *Cooper v. Sullivan*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

The RFC is the most a person can do, despite her physical or mental impairments. 20 C.F.R. § 404.1545. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *See Stubbs-Danielson*, 539 F.3d at 1174-75 (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC).

"Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE." *Leroy M. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-0632-HZ, 2019 WL 4276996, at *6 (D. Or. Sept. 10, 2019) (quoting *Rhinehart v. Colvin*, No. 2:15-cv-01704-AC, 2016 WL 7235680, at *12 (D. Or. Dec. 12, 2016) and citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001)).

As discussed above, the ALJ improperly discounted Plaintiff's subjective testimony and lay witness testimony. Therefore, the Court finds the ALJ erred in the dispositive hypothetical question posed to the VE. The Court finds the ALJ's step four finding is not supported by substantial evidence.

## VII.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The court first determines whether the ALJ committed legal error; and if so, the court must review the record and decide whether it is "fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal citation omitted). Second, the court considers whether further administrative proceedings would serve a "useful purpose." *Id*. at 407 (internal citation omitted). Third, if the court finds the record is fully developed and further administrative proceedings would not be useful, the court may credit the improperly discredited evidence as true and determine whether the ALJ would find the claimant disabled in light of this evidence. *Id.* (internal citation omitted). If so, the court may remand the case for an award of benefits, although the court ultimately retains "discretion in determining the appropriate remedy." *Id*. at 407-08 (internal citation omitted).

Remand for further proceedings is the proper course in this case. The Court concludes the ALJ committed legal error by improperly discounting Plaintiff's subjective symptom testimony, improperly discounting the lay witness testimony, and at step four of the sequential analysis. Additionally, the Court finds the record contains conflicts and ambiguities; therefore, the Court finds that remanding for further proceedings would serve a useful purpose. Accordingly, this case should be remanded for further administrative proceedings to: (1) reconsider Plaintiff's subjective symptom testimony; (2) reconsider the lay witness testimony; (3) reassess step four; and (4) take any further action necessary to complete the administrative record, and issue a new decision. S*ee Burrell v. Colvin*, 75 F.3d 1133, 1141 (9th Cir. 2014).

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED:  September 27, 2022  .

_____
MARCO A. HERNÁNDEZ
United States District Judge